## Heffernan v. McCullough

*James L. Brown*, for plaintiff.

*Anthony B. Panaway*, Assistant County Solicitor, for defendants.

PINOLA, P. J., May 8, 1962.—On October 6, 1961, Joseph S. Heffernan filed a complaint in mandamus against the members of the Luzerne County Prison Board and the county controller.

On August 15, 1961, Joseph Petroski, an attendant at the jail, was dismissed and Heffernan was hired to fill the vacancy at a salary of $3,344.96 annually.

He alleges that although he has performed his duties from August 16, the commissioners have refused to approve payment for his services and the controller has refused to sign the pay voucher necessary to obtain the payment.

At a meeting of the prison board on October 4, the motion of Commissioner McCullough that Heffernan be paid failed for want of a second.

On December 2, plaintiff was granted a leave of absence and he then began to work for the State, where he is still employed.

Defendants have filed a preliminary objection which reads as follows:

"The complaint of the plaintiff fails to set forth a cause of action for the reason that the complaint fails to show that the hiring of the plaintiff was in accordance and compliance with the Act of April 13, 1868, P. L. 917."

The act to which counsel refer governs the operation and maintenance of the Luzerne County Prison. It was passed when the prison was being erected.

In section 1, it provides that it shall be managed by the county commissioners and "two intelligent and reputable citizens of said county, *to be appointed*

*yearly, or oftener if necessary*, by the judges of the court of quarter sessions of said county, and who shall form a board to be called prison commissioners, and who shall take charge of said prison as is hereinafter provided." *

It is to be noted that the power of the court to appoint and change prison commissioners is unlimited. And it need not give a reason for any change.

Section 2 contains the rules and regulations for the government of the prison. In article I thereof, the commissioners are required to "annually nominate, and *with the approbation of the court of quarter sessions*, appoint a keeper and a physician for the prison, and when necessary a matron, and such under-keepers, except one to be appointed by the keeper, and attendants as may be required in and about the prison . . . they *shall at all times, after the annual period of appointing, have power*, with the approbation of two of the judges of the court of quarter sessions, the president being one, *to dismiss the keeper, matron or physician*, and to supply vacancies thus or otherwise occurring; . . ."

In section 9, the county commissioners are required to provide money for the expenses if it shall appear to them or "to the court of quarter sessions of the county, that the said sum applied for is reasonable . . ."

In section 13, the keeper is required to give bond with such an amount and such surety "as the court of quarter sessions . . . shall determine and approve . . ."

It is quite evident that the operation of the jail is subject to the general supervision of the court of quarter sessions.

Plaintiff contends that after the annual appointing, the prison board has authorty to hire and dismiss at will without the approval of the court or any of the

---

* Italics supplied throughout.

judges. Defendants, on the other hand, contend that all hiring, regardless of time, shall be with the approval of the court of quarter sessions and that dismissals shall be with the approval of two judges of that court, the president judge being one.

The complaint does not aver that the dismissal of Petroski had the approval of two judges, nor does it aver that the hiring of plaintiff had the approval of the court of quarter sessions.

Petroski has brought suit against the county for wages from the date of his dismissal, claiming that he was illegally dismissed.

Plaintiff's counsel ignores entirely the requirement of the court approval on hiring and argues that the phrase "to supply vacancies thus or otherwise occurring" refers only to vacancies in the positions of keeper, matron or physician. He urges that death might cause a vacancy, in which case it would be a vacancy "otherwise occurring." All other vacancies, he insists, may be filled by the prison board alone. He adds:

"If the Prison Commissioners are not to so function but the prison is to be run by the Court and managed by the Court, then we reach a result 'that is absurd' which the Legislature never intended."

Defendants' counsel argue that if plaintiff's contention be sound, the day following the annual appointment of personnel with the approbation of the court, the prison commissioners could dismiss all appointees, except the keeper, the matron and the physician, and then, without the court approval, hire personnel to replace those dismissed. This would indeed be an absurd result which the legislature never intended. Moreover, such a construction is unreasonable.

The prison commissioners have the power to make rules and regulations for the government of the prison with the approbation of the court of quarter sessions. Certainly this seems to be further evidence that the

court is expected to have a hand in the operation of the prison.

In article I of section 2, the prison commissioners are required "on or before the second Monday of the first term of the court of quarter sessions in every year, [to] make a report, in writing, to the said court, of the state of said prison; . . ." setting forth certain specific information.

The problem at hand requires a careful reading of the statute.

In the first place, article I requires that all appointments are to be made with the approbation of the court. If the court can nominate the prison commissioners at any time during the year, then certainly the appointments by the prison commissioners should be subject to the approval of the court.

As far as vacancies are concerned, it would seem that persons may be appointed under the general power with the approval of the court or they may be appointed under the limited power of two judges of the court.

We do not agree with plaintiff's contention that the court is limited to its approval in dismissals of the keeper, matron or physician.

The critical analysis following satisfies us that court approval must be had in all dismissals.

"They" is a pronoun, having as its antecedent "prison commissioners", and it is the subject of the clause.

"Shall have" is a verb phrase, the main verb of the clause.

"At all times" is a prepositional phrase, used as an adverbial phrase modifying the verb.

"After the annual period of appointing" is a prepositional phrase used as an adjective phrase, modifying "times."

"Power" is a noun, the object of the verb "shall have."

"With the approbation of two of the judges of the court of quarter sessions" is a prepositional phrase (a series of prepositional phrases) used adverbially, and modifying the verb "shall have."

"The president judge being one" is an absolute phrase, i.e., a phrase having no demonstrable syntactical relationship to the rest of the sentence.

"To dismiss" is an infinitive taking a compound object; "the keeper, matron or physician". It is used as an adjective phrase modifying "power."

"And" is a coordinating conjunction, i.e., a conjunction indicating grammatical equality between the two sentence parts which it joins.

"To supply vacancies thus or otherwise occurring" is an infinitive phrase used as an adjective modifying "power." "Vacancies" is the object of the infinitive. "Occurring" is a participle used as an adjective modifying vacancies. "Thus" and "otherwise" are adverbs modifying the adjective "occurring." "Or" is a coordinating conjunction.

Considering the parts of this sentence which are in dispute, we find that:

"At all times, after the annual period of appointing," used adverbially, indicates the *time* of the verb, that is, the time in which the power is to be held. The structure indicates that power is held by the prison commissioners at all times, except at the time of the annual period of appointing.

"With the approbation of two of the judges of the court of quarter sessions, the president being one," used adverbially, indicates the *condition of the verb*, that is, the condition under which the power is to be held. The structure indicates that power is held by the prison commissioners subject always to the approbation of the two judges (their "having" of the power is limited by the adverbial phrase).

The *power* of the prison commissioners is defined by the two infinitive phrases, used adjectively to modify (or limit) the noun "power." The coordinating conjunction "and", joining the two infinitive phrases indicates that they are of equal grammatical value as modifiers of the noun "power." The power of the prison commissioners, then, is defined as power both "to dismiss" and "to supply."

The compound objects, "the keeper, matron or physician," of the infinitive "to dismiss" further defines this power. In short, the prison commissioners have power of dismissal only over the keeper, matron or physician.

The object, "vacancies", of the infinitive "to supply", also defines further the power of the prison commissioners. They have the power to supply vacancies. "Occurring," a participle used as an adjective, modifies "vacancies," that is, they have the power to fill "occurring vacancies." The adjective "occurring" is situated in the appositive position, a common structure in English.

The words "thus" and "otherwise" are coordinate adverbs, that is, they are adverbs joined by a coordinating conjunction, "or", indicating that they have equal grammatical value. Therefore, they modify the adverb "occurring" equally. "Thus" refers to vacancies occurring as a result of the dismissal of the keeper, matron or physician. "Otherwise," of value equal to "thus" as a modifier of "occurring," refers then to vacancies *of any kind* which occur *in any manner* other than through the dismissal of the keeper, matron or physician.

In short, according to conventional English usage, this sentence in the act limits the power of the prison commissioners *at all times* to the approbation of the two judges of the court of quarter sessions in the matter of the supplying of vacancies which occur *in any manner whatsoever*.

We, therefore, conclude that the vacancy created by the dismissal of Petroski was not properly filled because, although the prison board did ask for the appoval of Heffernan's appointment, it was never had.

In passing, we point out that Heffernan did serve and as such was a de facto attendant. We recommended, therefore, that as a matter of equity, he be paid for his services.

We enter the following

### Order

Now, May 8, 1962, the preliminary objection is sustained and judgment is entered in favor of defendants.

### Dissenting Opinion

SCHIFFMAN, J., May 8, 1962.—I respectfully disagree with the opinion of the majority in this case.

The intricate statutory construction involved therein concludes that the approbation of two judges of the court of quarter sessions is necessary to validate such a contract. I am concerned with an interpretation, however, which does or does not preclude equitable considerations.

Assuming arguendo the merit of the majority's construction, I fail to find any mandatory language precluding plaintiff from recovering on quasi contract or unjust enrichment concepts.

The majority decision does not contend that the county was without power to make the contract here involved. Rather, the failure to secure the approbation of two judges of the court of quarter sessions is alleged as the defect in the entering into of this contract which renders it ineffectual.

Even if the majority's contention that the contract is invalid were correct, there is no conclusive or compelling reason to refuse to compensate plaintiff for his services. He has conferred the benefit of these services

upon the county by furnishing his labor under the circumstances here involved. He is entitled to recover if not on the contract itself, then upon a quantum meruit or unjust enrichment concept: Luzerne Township v. Fayette County, 330 Pa. 247. See article on Quasi-Contractual Liability of Municipal Corporations, 47 Harvard Law Review 1143.

In the instant case, the county has accepted and received the benefits of plaintiff's services. Under the circumstances, recovery for the labor furnished to the county may be had on an implied contract: Luzerne Township v. Fayette County, supra.

It is apparent that the circumstances of the hiring of plaintiff and of the services he rendered do not detach him from equitable consideration. Justice requires that a municipal or other governmental agency should not be allowed, any more than a private individual, wholly to repudiate an obligation of which it has deliberately appropriated the benefits.

I, therefore, believe judicial remedy to permit just compensation is desirable and proper in this case. I believe the order of the court must reflect plaintiff's right to be paid for his work.

I dissent from the opinion of the majority of my colleagues which does not enforce this right.